Ms. McLean Good morning. My name is Chelsea McLean and I'm here representing the petitioners. Petitioner Sanda Maritzma Pena De Rivas is a 27-year-old Salvadoran woman and the mother to petitioners 4-year-old Maria and 7-year-old Brittany. Sandra is actually with us today in the courtroom in the back row. Maria is with her grandmother today and Brittany is in school. Petitioners are seeking asylum, withholding from removal and relief under the Convention Against Torture based on persecution they suffered at the hands of the M18, a Salvadoran gang, on account of their membership in particular social groups. Petitioners have submitted extensive argument and evidence on these issues which we believe compel a reversal here. However, given that I have very limited time today, I want to focus on a path that would provide the minimum available relief to all petitioners, remand, while showing deference to the BIA. In sum, remand is appropriate here in light of, number one, the immigration judge and the BIA's utter failure to conduct an individualized analysis of Brittany and Maria's claims. And number two, the BIA's flawed analysis of the required nexus between persecution by a gang and a petitioner's membership in a particular social group, namely the family. Before I explain the legal basis for remand, petitioner's family-related claims, I'd like to take a moment to summarize the relevant legal and procedural history. Sandra and her young daughters fled El Salvador in 2014 in order to escape brutal beatings and threats of sexual slavery and death by the M18. Before fleeing, Sandra witnessed an M18 gang member shoot her brother, Carlos, outside their parents' home. Then three-year-old Brittany and 11-month-old Maria witnessed Carlos's bloody injuries when Sandra brought Carlos inside the parents' home. Sandra subsequently brought Carlos to the hospital so that he could receive treatment. However, when she got to the hospital, a police officer required that she complete a report regarding the shooting in order for Carlos to receive care. Sandra was obviously fearful that the M18 would retaliate if they found out she made the report, but knowing that Carlos needed the medical care, she reluctantly made the report, identifying herself as an eyewitness. In the days following the shooting, M18 members approached Sandra and demanded that she reveal her brother's location. Sandra told them that she did not know where her brother was. A week later, three female M18 gang members approached Sandra and told her that Saul, Sandra's uncle and an M18 gang leader, wanted to talk to her from prison. The women then handed Sandra a cell phone and forced her to speak to Saul, who demanded that Sandra reveal her brother's location. Sandra again refused. After the call, the M18 members beat Sandra and left her in the field. Following the assault, Sandra and her daughters fled to the home of Sandra's sisters a few hours away, still in El Salvador. However, even there, Saul again called and threatened Sandra. During this call, Saul demanded that Sandra begin a sexual relationship with him in exchange for protection. Recognizing the imminent danger that they faced when Sandra had refused to accede to Saul's demands, petitioners fled the country, eventually arriving in the U.S. After being apprehended by the government in Texas, petitioners were then placed in a detention center. In that detention center, then about one-year-old Brittany began showing signs of severe psychological trauma due to the events she'd witnessed in El Salvador, including hallucinations. While petitioners were in detention, a government official determined that Sandra had a credible fear of persecution. Thereafter, petitioners were placed in removal proceedings. Although Sandra claimed Brittany and Maria as derivatives in her asylum application, both girls filed their own independent asylum applications. In the briefing before the IJ, petitioners repeatedly emphasized that Maria and Brittany had filed separate applications and that as daughters of Sandra and nieces of Carlos, they have a well-founded fear of persecution based solely on their family relationships. How is this case different from Costanza in respect to gang targeting doesn't necessarily create a group identity that's protected. Well, I think there is ample evidence in the record that indeed Salvadoran society does recognize the group targeted gang girlfriends as a particular social group within El Salvador. For example, we've cited articles that refer to gangs pursuing young girls in order to make them girlfriends, articles that reference girls being murdered when they refuse to accede to a gang's demand that they be a girlfriend, as well as statements from our experts, Dr. McNamara and Ms. Kennedy, echoing that this is indeed a group that's recognized by Salvadoran society in contrast to some of the particular social groups framed in reference to gangs in other cases. If you got it quick and can save me a little time, where would I look in terms of the record for that being in evidence? So I would point you to AR-501, which is an NPR article, AR-1034, which is another, I think, El Salvadoran journalist, I believe, at AR-1114, a fourth publication at 1200, a statement by our expert, Elizabeth Kennedy, at AR-817, another statement by the same expert at AR-1117, a statement by Dr. Roberto Rodriguez, who's another legal expert in El Salvador at AR-1120. Now, you made a big point of how the children filed separate applications. How would their claims based on family be different from the mother's claim based on family? Would it be a different family, or if one fails, does the other necessarily fail, even though the board didn't address them separately? No, I think the children are situated differently than Sandra in two respects. The first is that, unlike Sandra, the sole reason that the children are facing persecution in El Salvador is because of their family relationships. They did not happen to witness the shooting of Carlos, such that the gang would be pursuing him for that reason. They were not subjected to this threat of being a gang girlfriend by Saul. The very reason, you know, is extensively- I know, but the mother also raised family as a social group, so- Right. So you're talking about the same family, or would her family be different than the children's family? Well, the relationships are slightly different, in that she's the sister to Carlos, whereas these girls are the nieces, and they're the daughters of Sandra, whereas, you know, that wouldn't necessarily be relationship-relevant to her. But in addition to that, as we briefed- What's the children's theory of why would they be persecuted on account of their family? The children's theory of persecution is that, as a child of somebody who's been targeted by the gang, they face a significant risk of persecution in El Salvador by virtue of that fact. And if you let me get back to my outline, I can share with you some of the record sites for that evidence. Well, just explain the theory. We can search the record, but what's the evidence that the gang would do something to the children? Why? For what reason? Yes. We have expert reports and articles that recognize that the gangs in El Salvador, including M-18, frequently target children of persons who are perceived to wrong the gang, simply as a way to get back at the person who's wronging the gang, and simply because these children are related to that person. And therefore, they are being targeted as family members. I understand the theory now. Now, what's the mother's family theory? Because it's different than what... The mother's family theory is that, yes, correct, Sandra was pursued by the M-18 gang because she was believed to be knowledgeable about her brother's whereabouts. Right. But the board says that's not really because of family, that's because of what she knew about the person they were seeking. Right. And I think the board's error in that respect is that they failed to address the fact that the very reason that Sandra was perceived to have knowledge of Carlos's whereabouts is because, as his sister, as a family member, she would be somebody who would know that. I think if she had witnessed the shooting and had been out walking her dog and happened to see this, it is far less likely that the gang would pursue her in regards to Carlos's location. And just turning back to the girls' claims for a moment, they're also differently situated from their mother in that numerous courts and, indeed, I think the Office of Immigration's own manual has recognized that child asylum applicants are subject to different standards when it comes to persecution. Something may not be a well-founded fear of persecution for an adult, but when viewed through the lens of a child's eyes, oftentimes that same fear can be persecution. I think the reality is here, that analysis didn't even occur at the BIA or the IJ. Both of the girls' claims were dismissed in a single sentence. The IJ erroneously concluded that they didn't have independent asylum applications when they indeed did, and the BIA concluded that while they had independent asylum applications, they were derivatives, so they didn't need to go any further. On remand... What does that mean? Although they're separate claims, they're derivatives. Does that mean the board thought they were the same claim as the mother? That's how I perceive it. I think the board viewed the case as rising or falling with the mother's claims, and as I've explained, that wouldn't necessarily be the case because of the difference in the child's claims, as well as the different standard of persecution that applies to child applicants. So on remand, I think the appropriate course would be for the BIA or the IJ, if the case is further remanded, to actually give these two little girls an individualized determination that considers those two standards with respect to them. You know, I can't predict what the outcome will be, but I think at least, at a minimum, these two girls should be given a day in court before they're put back on a plane to El Salvador to effectively await their death sentence there, because on the record we have, they were essentially treated as throwaways and were not given any due process before the lower courts. As I mentioned, we believe that remand of Sandra's claim is similarly required. In particular, this is a consolidated case. So a remand of the girl's claims would necessarily require a remand of the mother's claims as well. The case is consolidated and therefore travels together. Explain that. I don't understand. If we were to say the board made no error in rejecting the mother's claims, but the board failed to address the children's claims, so we remand for that purpose, why would the mother be entitled any further? At this stage, at this point in the case, it is one consolidated case. We actually moved to sever the girl's claims at one point about a year ago, and that motion was denied. So as a procedural matter, this is one case, and it goes to the appellate courts together and it goes to the lower courts together. I see that I have three minutes left. I'd like to reserve that for rebuttal if that's possible. Thank you, Ms. McClain. Ms. Tyler? Good morning, Your Honors. May it please the court, my name is Julia Tyler and I represent the United States in this immigration case. I'd like to start by thanking Ms. McClain and her firm for participating in this case on a pro bono basis. We appreciate her time and her advocacy on her client's behalf. Your Honors, we do believe that the court should deny the petition for review in this case because petitioner did not establish persecution on account of a statutorily protected ground. Specifically, two of the groups that she identified were not legally cognizable, and she was not mistreated on account of her membership in the third. Because Ms. McClain has refined somewhat her comments to a couple of the specific areas of contention here, I'm happy to confine mine as well, and if any of the judges have any questions about other matters, please feel free to interrupt me at any time. With regard to the family as a particular social group, in that instance, the board and the agency looked at all of the underlying evidence and found that there was no nexus to membership in what has been identified as a cognizable social claim. In the first instance, it's somewhat difficult to determine at any given time in the case which family she's referring to. Is she referring to the family of her brother, Juan Carlos Humberto, I'm sorry, it's easy to get these confused, or the family of her boyfriend partner, Juan Carlos? So that seems to go back and forth. But what the board looked at, and I would just like to just briefly sort of review the evidence that relates to the nexus. Ms. Rivas witnessed her brother being shot and at that time was told to be careful what she said about the incident. She was later told, this is in September of 2013, she was later told by a different gang member that somebody was interested in finishing the job and killing Juan Humberto. She told the immigration judge that shortly after the shooting, Juan Carlos, her boyfriend or partner, was confronted about Carlos Humberto's whereabouts. He lied and left for Mexico. It's important to remember that at the time of the shooting, there were three people who that was her mother, that was Ms. Rivas, and that was Juan Carlos. So they gathered him up and took him, got him to a hospital. And that was the last time the gang ever saw this individual. Male gang members confronted her sometime later and insisted that Ms. Rivas, again, tell her where her brother, Carlos Humberto, was. She refused. They left her unharmed. Then she was confronted by some female gang members a short time later. Sol was put on the phone. Sol insisted that she reveal her brother's whereabouts. And when she refused, again, to reveal her brother's whereabouts, these female gang members were ordered to beat her. And her uncle Sol actually said, I'm going to get these women to beat you and you're going to change your mind about telling me where your brother is. Where Carlos Humberto is. So she was asked by her own counsel at the hearing, why did you leave El Salvador? She said, because I witnessed a shooting against my brother. She told the immigration judge that when she was asked why these, she thought these women, these gang members, came to her and took her to the field. She said, I was with Carlos Humberto and I saw everything that happened to him. She told immigration officers in her second asylum interview that she feared gang members would kill her in her home country. Because she refused to give information of my brothers to the gang members. And because the gang members thought that she would tell people who shot him. So we have not just the evidence surrounding these incidents, we also have her own testimony during the immigration court hearing. That she was targeted, not because she's a member of her brother's family, but because she was the last best person to know where her brother went after he was shot and after he left the hospital. And in fact, she was involved in secreting him away at her uncle's house. So in none of these incidents, and this is significant for the case law before this court, is in none of these instances, did the gang members ever allude to harming her because she was related to Carlos Humberto. Or to Juan Carlos, for that matter. Is there evidence indicating family members remaining in El Salvador? Well, I'm glad, yes, I'm glad you asked that, Judge Smith. All of the relatives that Ms. Rivas shares with her, almost all, of the relatives that she shares with her brother, Carlos Humberto, remain to this day in El Salvador. And I think the most significant of those is Rivas' third daughter remains with her mother. The gang members clearly know where they are. They have requested extortion money, which they ask for from almost everyone that lives in El Salvador, you pay extortion money for your safety. And Ms. Rivas' parents have been paying that extortion money. And so far as this record reflects, there have been no threats. There has been no harm against Ms. Rivas' parents or Ms. Rivas' third child. Ms. Rivas' third child does remain in El Salvador, and as far as we know from this record, is safe to this day. In addition, also sharing that same family relationship with Carlos Humberto are two sisters, two brothers, three paternal uncles, their wives and their children, and another uncle on her mother's side of the family. All of those individuals remain, and this also, I should say, bleeds into the due process issue and how there would ever be a possibility for the children to have a separate claim under the family group. But just to finish this point- Go back then. How does it bleed into the children?  I would just like to finish with regard to the nexus of the family that this issue is clearly controlled by the board's decision in matter of LEA. Because in that decision, the board cautioned that the fact that a persecutor targets a family member simply as a means to an end. And in this case, that means to the end would be deriving information about Carlos Humberto's whereabouts. That is not, by itself, sufficient to establish a claim based on family membership. And in this case, in this court, in Combaro-Combaro, again, the court found that the petitioner had provided no proof that the criminal group targeted members of the family because of those family relationships as opposed to because of some other reason. I'd like to turn next, Judge Carlton, to the due process. First, I'm a little surprised that there's a claim, really, that these children did not get any process at all. I find that a very troubling accusation because the government's position is that the board did not abuse its discretion and there certainly wasn't a deprivation of due process in this case. What about just the fact that they didn't consider the claim separately? Whether it's due process or not. Sure, sure, I understand, Your Honor. But there's an administrative law problem that the board has never decided a separate claim of the children that she says now is based on a different family theory than what the mother's claim is based on. Understood. Let me just take this piece by piece. First, before the immigration judge. The petitioner's counsel never pressed the necessity or the importance of reviewing these cases individually, ever, ever before the immigration judge. There was no distinction drawn between the three cases in any of the hearings that were held before the immigration judge. In fact, petitioner's counsel repeatedly referred to these cases and these applications as derivative. If you look at page 177, we're still making that decision, but we think they're probably, we will be filing them as derivative. And also at 183, we have independent applications for all three, and then they are derivative on the mothers as well. In closing argument at page 337, petitioner's counsel says Revis's asylum application is not just for herself, but for her daughters. And in closing, petitioner's counsel made no reference to the daughters, saying only that Sandra Maritza is eligible for relief under asylum withholding of removal in CAP. And that's in the record at page 338. Now, there are some- Is this a waiver argument? It's not some, I think that it's important if you, I think in a sense it is. If you were going to press that these are individually significant and they have completely different claims or they're proceeding under different theories. I think you have an obligation to make sure that that's clear to the immigration judge. Okay, what happened at the level of the board? It was raised to the board and the board decided that they found these claims derivative. What was raised with the board exactly? That they should have been individually adjudicated. So she did exhaust the claim before the board. The question is whether or not, in some sense, she ever really raised this before or if this is some sort of a post hoc analysis. I would just point out- You mean when it was raised with the board, it wasn't argued the way it's being argued now? It was just argued that they should have- I think I'm trying to remember the exact contours, but I think that she felt that they should have received an individual adjudication. But again, as the government has maintained, this is more form than substance here. And I'll tell you, I'm happy to just explain here why. The first issue where children are treated quite differently or somewhat differently under immigration laws is the kind of persecution or the kind of trauma or mistreatment that can rise to the level of past persecution. And the government is absolutely horrified by what happened to this family. And unfortunately, it happens all too often in that country. But whether or not what had occurred with regard to these children or Ms. Rivas and whether that conduct rose to past persecution was never an issue in this case. Because the agency decided the case on the issue of legal cognizability of her social groups. And then with regard to family, whether or not there was a nexus between the mistreatment that she experienced and the social group that she was articulating. So whether or not- But the concern on the children is that they might have a different argument on nexus. They might, and I'll just tell you why they don't, and I'll tell you why it would be futile to send it back. Because number one, although she has claimed a particular social group of family, the board found that she had established no nexus with her family. In other words, she was persecuted on account of the fact that she was not informing people of where Carlos Humberto was, and- I know what they said about the mother. But her argument here today is that children could be persecuted simply because the gang wants to gain retribution against the mother. Yes. Now that would not be because, you think that would be because of her knowledge about the brother, or is that more of a- I think it's important to keep in mind- On account of family. I think it's important to keep in mind that these children were never threatened directly. They were witnesses to Carlos Humberto being dragged into the home with bloody feet. They were never touched. They were never directly threatened. And- Well, if the board had said that was our rationale for rejecting the children's claims, then we could consider that. But we don't have a- Well, we also do have the evidence that all of her other family members are remaining in El Salvador and have not been harmed. If this were, if it were true, your honor, that the child of Ms. Rivas would have an independent family membership claim, then one would expect that Mier, who is currently Ms. Rivas' third child, who is living in El Salvador, there would be some threats or some claim against her. Yeah, I just think there's a Chenery problem here. If you're trying to give us rationales for why the children would lose, if the board's decision was just they fall with the mother. I think that it's quite clear before the immigration judge, they never pressed the independence of those claims. We'll look at that. And I think that certainly sending it back for the children at this point would be a futile exercise. It would not be likely to change the outcome of the case. And I think that because there's no nexus to the family and because we certainly have other evidence that it is not, that goes to the heart of her, of this family-based claim in general. That there is no family-based claim here. The fact that several members of Juan Carlos' family may still be there. There are people who came for other reasons. And the fact that certainly Juan Carlos' family, including, I'm sorry, Carlos Humberto's family, including Carlos Humberto himself, who would not, is sort of the heart of all of this. They had a major beef with him, and they pursued him on that basis, and pursued her because she would not reveal his whereabouts. I have just a little bit more time to go back, if I could. Make sure there's nothing else I wanted to, I do, I would just say again, I think that they were not denied due process, I think their claims were raised. And I think that at the evidentiary stage, it's critical to highlight if there was any particular nuance or difference or independence in their case theory that the immigration judge should have spent time on. And that was not done. With regard to targeted gang girlfriends, I guess I'll just touch on that very briefly in the last 30 seconds. I've reviewed various things that have been cited in the record by petitioners' counsel. She's done an admirable job. I would just point out that simply discussing the fact that something goes on, like the fact that individual girls are targeted by gangs or that certain gang members want girls to be their girlfriends, is not a reflection of social distinction in the sense that the board has defined it. So the board requires that a particular society identify a group as discrete and distinct segment within society. So having an article that says that this is a phenomenon is not the same. Well, wouldn't that type of evidence be proof, or would it be some- It would certainly not be proof of social distinction. And I would go back to Enriquez-Rivas, which was a case the petitioner's counsel relied on and sought to analogize her case with. In Enriquez-Rivas, the Ninth Circuit identified the fact in the record that the government of that particular country had actually passed laws to protect individuals who are witnesses and who testify against gang members. So the social distinction was actually marked by the action that was taken by the government and by society. Did the IJ or the BIA address any of those items that- I'm sorry, I'm not understanding you. The question I asked to opposing counsel was the evidence of, in the record, of the social groups that they are purporting to be a part of showing that that's actually the case in their petition. Well, I think that- And so my question to you is whether there is something in the record indicating that the administration actually looked at any of that information and how it dealt with it. Oh, I think it's quite clear that the immigration judge, if you go back to the decision that the immigration judge did look at the record and did, it's always, it's always, if you go back to the immigration judges at page seven, society does not seem to, does not recognize women targeted as a discrete class of persons that is distinguishable from the rest of the society. I think that there's a, there's, there's a presumption of regularity. We know, I don't go through the, she, the immigration judge went chapter and verse through all of the exhibits. There was a voluminous record. And I don't think we can necessarily fault the immigration judge simply because they didn't cite to us, you wouldn't, this is an omission of evidence. This is a lack of evidence. And it's quite clear that, and I would also point out that a lot of the evidence that petitioner relies on are, are discussions of gang girlfriends, not targeted gang girlfriends. Targeted gang girlfriends are one step removed from an actual gang girlfriend. So just because you have a social, even if, and I can't find a single case where a gang girlfriend's been identified as a social group, much less a targeted gang girlfriend, which would, by the way, both be identified only by the, really by the eyes of the persecutor. And again, is, is defined by the persecution itself. I see I've gone over my time. I greatly appreciate your efforts. Thank you so much for your time, your honors. Thank you, Ms. Tyler. Ms. McLean, your rebuttal. All right. So Ms. Tyler talked a lot about facts that may have rendered a different, a result that she desires, a denial of Brittany and Maria's asylum claims before the IJ or BIA. However, the reality is that analysis never occurred here. It's not for us to sit here and say that existence of living family members in El Salvador or the fact that the girls weren't directly threatened should warrant a different result. That analysis should have occurred as part of an independent, individualized determination of Brittany and Maria's claims. That hasn't happened. And that's the reason that a remand is warranted here. What about her statement that the petitioners never asked for that? That is untrue. We have cited evidence in the record that indeed, both during the IJ briefing, oral argument and the BIA briefing that we did, repeatedly make a distinction between the girls' family-based claims and Sandra's. I would point you to AR-415, which is Respondent's second pre-hearing brief before the IJ, where we say Respondents Brittany and Maria are at risk simply because they are the children of and also in our BIA brief at AR-47, we argued Maria and Brittany are immutably the children of Sandra and the nieces of Juan. They are at risk of being targeted and killed because of that relationship. I think that was a pretty clear articulation of the family nexus I described earlier. And yet the BIA and the IJ both failed to address that issue at all. Going back to the comments about the gang girlfriend argument, I also think it's incorrect to say that the IJ went through the evidence chapter and verse. Yes, there is a conclusory remark in the IJ's decision that there wasn't evidence of social distinction, but there's no analysis of the evidence that I cited to the court earlier. And I think if you look at those five or six articles or expert reports that I cited, they do in fact reference targeted gang girlfriends, as opposed to women who are already subjected to the role of gang girlfriend, and indeed recognize that Salvadoran society sees that group, targeted gang girlfriends, as a particular social group within their society. As for the fact that there are certain family members remaining in El Salvador unharmed, I don't think that alone warrants a denial of either the girls or Sandra's claims. In fact, they may face persecution just as much as Sandra does, and I think the Supreme Court has said in one case that a 10 percent chance of persecution can be a well-founded fear of persecution. And as to the daughter that remains in El Salvador, I don't think there's any evidence that the gang knows that that's Sandra's daughter. The daughter lives with other family members. She has never lived with Sandra, and so I don't think there would be a recognition or a perception by the gang. The same there would be with Marie and Brittany that this other daughter belongs to Sandra and would therefore be targeted. I see I'm out of time. I thank you very much. Thank you, Ms. McClain. The court wishes to thank both counsel for the arguments you've provided to the court this morning. We will take the case under advisement, render decision in due course. Thank you.